**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

MADELINE F. P.,[1]   )
                    )
    Plaintiff,      )
                    )    CIVIL ACTION
v.                  )
                    )    No. 18-2244-JWL
NANCY A. BERRYHILL, )
Acting Commissioner of Social Security, )
                    )
    Defendant.      )
_____)

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.    Background**

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff argues that the ALJ erred in failing to find that Plaintiff's condition met the requirements of Listing 1.02 and Listing 3.02(A); in finding that Plaintiff's mental impairments are not severe and not including mental functional limitations in the residual functional capacity (RFC) assessed; and in weighing the medical opinion evidence.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's]

decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process--determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the

3

burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court considers the issues in the order presented in Plaintiff's Brief.

## II.  Listings

Plaintiff argues that the ALJ erred in failing to find that Plaintiff's condition meets the requirements of Listing 1.02 and Listing 3.02(A). (Pl. Br. 11, 13).

### A.  Step Three Standard

The Commissioner has provided a "Listing of Impairments" which describes certain impairments that she considers disabling. 20 C.F.R. § 404.1525(a); see also, Pt. 404, Subpt. P, App. 1 (Listing of Impairments). If a claimant's condition meets or equals the severity of a listed impairment, that impairment is conclusively presumed disabling. Williams, 844 F.2d at 751; see Bowen v. Yuckert, 482 U.S. 137, 141 (1987) (if a claimant's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled"). However, Plaintiff "has the burden at step three of demonstrating, through medical evidence, that h[er] impairments 'meet all of the specified medical criteria' contained in a particular listing." Riddle v. Halter, No. 00-7043, 2001 WL 282344 at *1 (10th Cir. Mar. 22, 2001) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in Zebley)). "An impairment that manifests only some of

4

[the listing] criteria, no matter how severely, does not qualify" to meet or equal the listing. Zebley, 493 U.S. at 530.

"The [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" Zebley, 493 U.S. at 532-33 (emphasis in original) (citing 20 C.F.R. § 416.925(a) (1989)). The listings "streamlin[e] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." Yuckert, 482 U.S. at 153. "Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively." Caviness v. Apfel, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998).

### B. Listing 1.02

Plaintiff argues, "In the present case, the instability, chronic pain, limited range of motion and joint space narrowing of [Plaintiff's] right ankle meets [sic] the requirements of listing § 1.02," id. at 11, and the ALJ's rationale that "the evidence does not demonstrate that [Plaintiff's] impairments demonstrated in ability [sic] to ambulate effectively … is not supported by the substantial evidence of record." Id. at 12. The Commissioner argues that even if one assumes that Plaintiff's condition meets the other requirements of Listing 1.02, the ALJ reasonably and correctly found that "she did not have the required 'inability to ambulate effectively.'" (Comm'r Br. 8) (quoting, without direct citation, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02). In her Reply Brief, Plaintiff

5

notes that the Commissioner spent two pages of her Brief "explaining how [Plaintiff] failed to show she was incapable of ambulating effectively, compared to the ALJ's analysis that consisted of a single sentence," and argues, " The Commissioner's line of reasoning was never advanced by the ALJ; therefore, it is improper for the Commissioner to attempt to now insert reasoning and rationale where none existed." (Reply 1-2) (citing SEC v. Chenery Corp., 318 U.S. 80, 93-95 (1943)).

The parties agree that the Listing is met if Plaintiff's impairment(s) result in the "inability to ambulate effectively." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.02. "Inability to ambulate effectively means an extreme limitation of the ability to walk." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b)(1) (emphasis added). "To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." Id. at § 1.00(B)(2)(b)(2). Plaintiff does not directly argue that her condition results in the inability to ambulate effectively (although she does imply it). Rather, she argues that since the ALJ did not cite the specific evidence cited in the Commissioner's Brief, the Commissioner is prohibited from using that argument. (Reply 1-2).

Plaintiff's argument, misunderstands the court's holding in Chenery Corp. In Chenery, the court summarized its holding:

> the orderly functioning of the process of review requires that the grounds upon which the administrative agency acted by [sic (be?)] clearly disclosed and adequately sustained. "The administrative process will best be vindicated by clarity in its exercise." Phelps Dodge Corp. v. National Labor Relations Board, 313 U.S. 177, 197, 61 S.Ct. 845, 853, 85 L.Ed. 1271, 133 A.L.R. 1217. What was said in that case is equally applicable here: "We do not intend to enter the province the [sic (that?)] belongs to

6

> the Board, nor do we do so. All we ask of the Board is to give clear indication that it has exercised the discretion with which Congress has empowered it. This is to affirm most emphatically the authority of the Board." Ibid. Compare United States v. Carolina Carriers Corp., 315 U.S. 475, 488, 490, 62 S.Ct. 722, 729, 730, 86 L.Ed. 971. In finding that the Commission's order cannot be sustained, we are not imposing any trammels on its powers. We are not enforcing formal requirements. We are not suggesting that the Commission must justify its exercise of administrative discretion in any particular manner or with artistic refinement. We are not sticking in the bark of words. We merely hold that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained.

Chenery Corp., 318 U.S. at 94–95.

Here, the ground relied upon by the ALJ in finding that the criteria of Listing 1.02 are not met was:

> The listing also requires involvement of one major peripheral weight-bearing joint resulting in inability to ambulate effectively as defined in 1.00B2b. In this case, the evidence does not demonstrate that the claimant has the degree of difficulty in ambulating as defined in 1.00B2b.

(R. 20). The ALJ found the evidence does not demonstrate Plaintiff's condition results in "inability to ambulate effectively" as defined in 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b). The Commissioner's Brief points to record evidence which shows that Plaintiff's condition does not result in "inability to ambulate effectively" as defined in 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b). The Commissioner merely points to record evidence supporting the reasoning relied upon by the ALJ, she does not "insert reasoning and rationale where none existed" (Reply 2), as argued by Plaintiff.

Plaintiff's argument is in the nature of an argument that the Commissioner provided a post hoc rationalization for the ALJ's decision. She did not. To be sure, an

7

ALJ's decision should be evaluated based solely on the reasons stated in the decision. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). A decision cannot be affirmed on the basis of the Commissioner's post hoc rationalizations for agency action. Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985). Nor may a reviewing court provide post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision. Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005). The starting point in such a determination is the rationale presented in the final decision of the Commissioner and not what another individual, or even the court, might view as a "proper" weighing of the evidence. 42 U.S.C. § 405(g). The court first determines the rationale presented in the final decision for the finding at issue here--"the evidence does not demonstrate that the claimant has the degree of difficulty in ambulating as defined in 1.00B2b." (R. 20). Since the Commissioner's Brief points to record evidence supporting that rationale, even if that evidence was not specifically mentioned in the final decision, it is proper argument in support of the final decision. Since the Commissioner does not attempt to provide an alternative rationale in support of the decision, she has not provided post-hoc rationalization which may not be relied upon by the court to affirm the decision. The Commissioner found that Plaintiff's condition does not meet Listing 1.02 because she did not demonstrate inability to ambulate effectively, and Plaintiff has not shown otherwise.

### C. Listing 3.02(A)

The court's consideration of Listing 3.02(A) is to an identical effect. Plaintiff points out that she was tested with an $FEV_1$ value of less than the value listed in the tables

for Listing 3.02(A), and argues that the ALJ's finding that the "evidence failed to document any medical tests necessary to satisfy the requirements of the listing" (R. 20), is an error of fact. (Pl. Br. 14). The Commissioner acknowledges that Plaintiff received an $FEV_1$ value of less than the value listed in the tables, and argues that not "any $FEV_1$ reading will suffice for purposes of the listing," but that the Listing provides certain criteria for testing which were not met in this case. (Comm'r Br. 10) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 3.00(E)(2)(a)). She argues that the "testing did not meet the Commissioner's standards for reliability and was not given at the requisite time." Id. Citing Chenery Corp., Plaintiff again argues that the Commissioner's finding "was not made by the ALJ; therefore, it is again improper for the Commissioner to attempt to create support for the ALJ's ultimate determination by providing analysis that was not a part of the ALJ's decision." (Reply 2). Plaintiff's argument fails for the same reason her Listing 1.02 argument failed. The ALJ stated that the criteria of Listing 3.02 were not met because "[t]he evidence fails to document any of the medical tests necessary to satisfy the requirements of listing 3.02." (R. 20). The Commissioner's Brief points to the testing requirements which were not met and to the record evidence demonstrating that fact. The Commissioner has not provided an analysis that was not a part of the ALJ's decision, she merely pointed out the evidence which confirms the ALJ's analysis. As noted above, that is not error.

III.   **Mental Impairments**

Plaintiff argues that the ALJ should have found she has mental impairments which are "severe" within the meaning of the Act and the regulations and that, even if it was

9

proper to find no "severe" mental impairments, he should have included functional limitations in his RFC relating to Plaintiff's mental limitations. She notes that Dr. Rettinger diagnosed her with "disabling" bipolar disorder, opined that she was unable to hold a job due to manic and paranoid behaviors, and prescribed several medications for her mental impairments. (Pl. Br. 15). She points to her testimony of difficulty being around people and to increased paranoia which lead to feeling like everything is "caving in on her," and an inability to leave her house at times. Id. Plaintiff argues that her "social functioning and ability to follow even simple instructions is significantly impaired as a result of her mental impairments. She testified that she was fired from her prior employment because of her difficulties keeping up with the pace of the job, taking too many breaks, and having difficulties with ongoing paranoia around others." Id. at 17.

The Commissioner argues that the ALJ's determination that Plaintiff's mental impairments are not severe is supported by the record evidence, and that in any case the ALJ found a severe combination of impairments in his step two analysis, requiring only that he consider the effects of all of Plaintiff's impairments in assessing RFC. (Comm'r Br. 11-13) (citing Allman v. Colvin, 813 F.3d 1326, 1330 (10th Cir. 2016) ("[F]ailure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe.")). She argues that the ALJ properly assessed no mental limitations in the RFC despite Plaintiff's contrary testimony and Dr. Rettinger's opinion that Plaintiff's mental impairments are disabling. Id. at 12-13. In her Rely Brief, Plaintiff reiterates her arguments, and distinguishes Allman. (Reply 2-3).

### A. The Step Two Standard

A mental impairment is not considered severe if it does not significantly limit plaintiff's ability to do basic work activities such as understanding simple instructions, responding appropriately to usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521. The Tenth Circuit has interpreted the regulations and determined that to establish a "severe" impairment or combination of impairments at step two of the sequential evaluation process, Plaintiff must make only a "<u>de minimis</u>" showing. <u>Hinkle v. Apfel</u>, 132 F.3d 1349, 1352 (10th Cir. 1997). Plaintiff need only show that an impairment would have more than a minimal effect on her ability to do basic work activities. <u>Williams</u>, 844 F.2d 748, 751 (10th Cir. 1988). However, she must show more than the mere presence of a condition or ailment. <u>Hinkle</u>, 132 F.3d at 1352 (citing <u>Bowen v. Yuckert</u>, 482 U.S. 137, 153 (1987)). If an impairment's medical severity is so slight that it could not interfere with or have a serious impact on Plaintiff's ability to do basic work activities, it could not prevent Plaintiff from engaging in substantial work activity and will not be considered severe. <u>Hinkle</u>, 132 F.3d at 1352.

The determination at step two is based on medical factors alone, and not vocational factors such as age, education, or work experience. <u>Williamson v. Barnhart</u>, 350 F.3d 1097, 1100 (10th Cir. 2003). A claimant must provide medical evidence that she had an impairment and how severe it was during the time the claimant alleges she was disabled. 20 C.F.R. § 404.1512(c).

In <u>Brescia v. Astrue</u>, 287 F. App'x 626, 628-29 (10th Cir. 2008), the claimant argued that the ALJ improperly determined that several of her impairments did not qualify as severe impairments. The court held that once an ALJ has found that a plaintiff

has at least one severe impairment, a failure to designate another as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. Later, in <u>Hill v. Astrue</u>, 289 F. App'x. 289, 291-92, (10th Cir. 2008), the court held that the failure to find that additional impairments are also severe is not in itself cause for reversal so long as the ALJ, in determining the claimant's RFC, considers the effects "of <u>all</u> of the claimant's medically determinable impairments, both those [s]he deems 'severe' and those 'not severe.'"

**B.** **Analysis**

At step two the ALJ specifically applied the Commissioner's psychiatric review technique and determined that Plaintiff has mental impairments but that those impairments are not "severe" within the meaning of the Act and the regulations. (R. 18-19). He stated that in assessing Plaintiff's mental impairments as non-severe, he had

> considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 16-3p. I have also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96 6p and 06-3p.

<u>Id.</u> at 18. Moreover, the ALJ accorded great weight to the medical opinions of the state agency psychological consultants, <u>id.</u> at 25, who found that Plaintiff's mental impairments are not severe. <u>Id.</u> at 61-62, 73-74. Therefore, Plaintiff's testimony of more than minimal limitations in performing basic mental work activities which result from her

mental impairments, and Dr. Rettinger's opinion of disabling mental impairments require a different finding regarding mental functional limitations only if the ALJ erred in finding Plaintiff's allegations of symptoms not entirely consistent with the record evidence, or in finding that Dr. Rettinger's opinions are worthy of little weight. (R. 26). Plaintiff does not even object to the ALJ's findings regarding her allegations of symptoms, and the court finds that those findings are supported by the record evidence. As explained later in this decision, the court finds no error in the ALJ's evaluation of the medical opinions. Moreover, although Plaintiff alleges that she has difficulty being around people, paranoia, feeling like everything is "caving in on her," inability to leave her house at times, that her ability to follow simple instructions is significantly impaired, and that she was fired from her prior employment because of her difficulties keeping up with the pace of the job, taking too many breaks, and having difficulties with ongoing paranoia around others, the ALJ found her allegations inconsistent with the record evidence, and she points to no record evidence suggesting specific mental functional limitations which should have been assessed. She has shown no error in the ALJ's evaluation of her mental impairments.

## IV.     Medical Opinion Evidence

Plaintiff argues that the ALJ erred in according little weight to Dr. Rettinger's treating source medical opinion, because the ALJ did not cite to any specific inconsistency, he substituted his own lay opinion for that of Dr. Rettinger, and "Dr. Rettinger's opinion is buttressed by the opinion of J. Searing, F.N.P.-C, as well as the treating rheumatologist Stephen Ruhlman, M.D." (Pl. Br. 20). The Commissioner argues that the ALJ gave specific, legitimate reasons to discount Dr. Rettinger's opinions which

13

are supported by the record evidence. She points out that the ALJ discounted the opinions because they were on the ultimate issue of disability, an issue reserved to the Commissioner, because they were inconsistent with the medical evidence and inconsistent with his own treatment notes, and because the opinions relied heavily on Plaintiff's subjective complaints. (Comm'r Br. 14-16). In her Reply Brief, Plaintiff argues, "There is no treating or examining medical evidence of record during the period in question that is contrary to the opinion expressed by Dr. Rettinger." (Reply 4). And, "There is no better or more thorough medical assessment in the record than the opinion of [Plaintiff's] long-time treating provider." Id.

### A. Standard for Evaluating Medical Opinions

For claims filed before March 17, 2017, as was the claim in this case, "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources[2] that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. § 404.1527(a)(2). Such opinions may not be ignored and, unless a treating source

---

[2]The regulations define three types of "acceptable medical sources:"

"Treating source:" an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship. 20 C.F.R. §§ 404.1502, 416.902.

"Nontreating source:" an "acceptable medical source" who has examined the claimant, but never had a treatment relationship. Id.

"Nonexamining source:" an "acceptable medical source" who has not examined the claimant, but provides a medical opinion. Id.

14

opinion is given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations. Id. § 404.1527(c); Soc. Sec. Ruling (SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2018). A physician who has treated a patient frequently over an extended period (a treating source) is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)). However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2018) ("Giving Controlling Weight to Treating Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p). The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Id. at 1300 (quoting SSR 96-2p). If the opinion is well-supported, the ALJ must confirm that the opinion is also consistent with other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

If the treating source opinion is not given controlling weight, the inquiry does not end. Id. A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. § 404.1527(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion. Id. 350 F.3d at 1301. "Finally, if the ALJ

16

rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing

so." Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v.

Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

**B.      Analysis**

The ALJ evaluated the medical opinions of the state agency medical consultants,

Dr. Smith and Dr. May; the state agency psychological consultants, Dr. Akeson, and Dr.

Becker; of Plaintiff's treating physician, Dr. Rettinger; and of the "other medical source"

opinion of Ms. Searing, a nurse-practitioner who treated Plaintiff. (R. 25-26). Finding

"[t]he other objective medical assessments of record reflects [sic] that the claimant is

more limited than found by the medical consultants," the ALJ accorded "little weight to

the opinions of the State [sic] agency medical consultants." (R. 25). As noted previously

in this opinion, the ALJ accorded great weight to the opinions of the state agency

psychological consultants. Id. He explained these opinions were worthy of great weight

because they "are internally consistent as well as consistent with the evidence as a whole.

As there is no objective evidence contradicting these findings, the opinions are entitled to

substantial weight." Id. at 25.

The ALJ next discussed Dr. Rettinger's treating source opinions, and explained his

bases for according them little weight:

> I gave Dr. Rettinger's opinions little weight noting that [(1)] they are
> inconsistent with the objective medical evidence of record [(2)] and with
> Dr. Rettinger's own records, and [(3)] relied heavily on the claimant's
> subjective complaints. [(4)] There were no examination findings
> supporting the opinions. Finally, [(5)] statements that a claimant is
> "disabled", "unable to work", can or cannot perform a past job, meets a
> Listing or the like are not medical opinions but are administrative findings

17

> dispositive of a case, requiring familiarity with the Regulations and legal standards set forth therein. Such issues are reserved to the Commissioner, who cannot abdicate his or her statutory responsibility to determine the ultimate issue of disability. Opinions on issues reserved to the Commissioner, such as those of the doctors reported above, can never be entitled to controlling weight, but must be carefully considered to determine the extent to which they are supported by the record as a whole or contradicted by persuasive evidence.

(R. 26) (reasons numbered for clarity). As the Commissioner suggests, the ALJ provided five reasons for discounting Dr. Rettinger's opinions. Plaintiff attacks only the first and second reasons, arguing that the ALJ provided no citation to any inconsistency. (Pl. Br. 19). While it is true that in his discussion of Dr. Rettinger's opinions, the ALJ did not cite to inconsistencies between the evidence and Dr. Rettinger's opinions, as the Commissioner points out, the decision should be considered as a whole, and throughout the decision, the ALJ pointed to record evidence which did not support a finding of disability, including normal examination findings, successful treatment, improvement with treatment, no specialized treatment other than medication for mental impairments, and impairments controlled with medication. As for the inconsistencies with Dr. Rettinger's own treatment notes, the Commissioner also points out that for every psychological exam performed by Dr. Rettinger, he reported normal findings. Moreover, as the ALJ noted Plaintiff received no treatment for her alleged paranoia and manic episodes. (R. 27).

Plaintiff has not shown error in the first two reasons relied upon by the ALJ, and she does not address the other three reasons. She merely argues that Dr. Rettinger is a treating source, his opinion is "buttressed" by Ms. Searing's opinion and by Dr.

18

Rhulman's opinion, and his opinion should have been accorded greater weight. She does not suggest how Dr. Rhulman's and Ms. Searing's opinions buttress Dr. Rettinger's opinion. The ALJ addressed Ms. Searing's opinion and explained his bases for discounting it, and Plaintiff does not allege error in these findings. Moreover, the ALJ addressed Dr. Rhulman's treatment notes and did not identify any opinion therein other than Dr. Rhulman's diagnoses of osteoarthritis, fibromyalgia, and sleep disorder. (R. 22). The mere presence of impairments does not "buttress" Dr. Rettinger's opinion regarding disability. Plaintiff does not suggest any functional limitations opined by Dr. Rhulman which support Dr. Rettinger's opinion, and the court is unable to discern any such limitations from Dr. Rhulman's mostly illegible treatment notes. Essentially, Plaintiff's argument asks the court to reweigh Dr. Rettinger's opinion and accord it greater weight than did the ALJ. It will not do so.

As demonstrated herein, Plaintiff has shown no error in the ALJ's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated March 15, 2019, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**
